J-A06039-20

2020 PA Super 71

| | | |
|---|---|---|
| BRIANNA PASQUINI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FAIRMOUNT BEHAVIORAL HEALTH | : | |
| SYSTEM & UHS OF FAIRMOUNT, | : | |
| INC. | : | No. 2017 EDA 2019 |
| | : | |
| Appellants | | |

Appeal from the Order Entered May 14, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 170802950

BEFORE:   STABILE, J., KING, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    March 25, 2020

Fairmount Behavioral Health System & UHS of Fairmount, Inc. (Appellants) appeal from the Order entered on May 14, 2019, in the Court of Common Pleas of Philadelphia County granting Brianna Pasquini's (Appellee) Motion to Strike Objections to Requests for Admission and requiring Appellants to admit or deny whether they knew a non-party patient was a registered sex offender in January of 2016.  After careful review, we affirm.

The trial court set forth the relevant procedural history herein as follows:

> PROCEDURAL HISTORY
> On August 29, 2017, [Appellee] filed the instant litigation alleging a personal injury action arising out of the preventable rape and sexual assault suffered by Appellee while she was receiving inpatient addiction treatment at [Appellants'] facility. Appellee alleges in January, 2016, she was raped and assaulted

---

[*] Former Justice specially assigned to the Superior Court.

by Montezz Hewlett, a fellow patient at the facility who, at the time, had a documented history of violent sexual crimes- including a rape conviction- and was a registered sex offender. Appellee alleges that Appellants knew or should have known of Hewlett's history and sex offender status, yet they allowed him unfettered and unmonitored access to Appellee, resulting in her rape and sexual assault.

While conducting discovery, Appellee served a request for admissions stating: "It is admitted that Defendant, Fairmont Behavioral Health System, knew that Mr. Hewlett was a convicted sex offender in January 2016." Mr. Hewlett's status as a sex offender is publicly available information via the internet due to the requirements of Pennsylvania's Registration of Sexual Offenders Act ("Megan's Law"), 42 Pa.C.S.A. §9799.10, et seq. Appellants objected, claiming that the information sought was "privileged" because Hewlett was a patient at their facility. Appellee moved to strike this objection, noting the request sought Appellants' knowledge of publicly available information.

Following briefing and oral argument before this [c]ourt, Appellee's motion to strike Appellants' objection was granted, requiring Appellants to respond to the request for admission. Appellants, in response, filed a motion for reconsideration, or in the alternative, certification to appeal the May 14, 2019 Order. Appellants also filed two motions seeking to stay the case. Appellants argued that responding to the request would require disclosing privileged information about Hewlett, therefore, the Order should be vacated. This [c]ourt denied all of Appellants' motions.

On June 12, 2019, Appellants filed a Notice of Appeal, claiming the May 14 order is collateral under Pa.R.A.P. 313(b) because it violates the confidentiality provisions of the Mental Health Procedures Act, 50 P.S. §7101, et seq. and the psychiatrist -patient privilege. Subsequently the Superior Court denied Appellee's Motion to Quash.[1]

---

[1] The trial court's assertion is partially correct. On August 5, 2019, Appellee filed her Application to Quash with this Court, and Appellants answered the Application on August 19, 2019. In a Per Curiam Order entered on September 6, 2019, this Court denied Appellee's motion to quash without prejudice to Appellee's right to raise the issue again in her appellate brief or in a new application that may be filed after the appeal has been assigned to a merits panel. Appellee has not done so.

Trial Court Opinion, filed 9/26/19, at 1-2.

On July 8, 2019, Appellants filed their Concise Statement of Errors Complained of on Appeal which is a four-page narrative. Therefore, Appellants contend they cannot readily discern the basis for the trial court's decision, and therefore, they "generally challenge" the court's finding that they must respond to Appellee's request for admission at issue. Concise Statement of Errors Complained of on Appeal, 7/8/19, at 2. Appellants further state that "this statement of errors includes every subsidiary issue [Appellants] raised in [their] Response to Appellee's Motion to Strike and in [their] Motion for Reconsideration submitted following the entry of the May 14, 2019, Order." *Id*.[2] On September 26, 2019, the trial court filed is Opinion pursuant to Pa.R.A.P. 1925(a).

_____

[2] In light of Appellants' deficient concise statement, we could find any claims raised on appeal waived for failure to present them properly in the concise statement in violation of the Pennsylvania Rules of Appellate Procedure. As this Court recently stated:

> [I]ssues not raised in a Rule 1925(b) statement will be deemed waived for review. An appellant's concise statement must properly specify the error to be addressed on appeal. In other words, the Rule 1925(b) statement must be "specific enough for the trial court to identify and address the issue [an appellant] wishe[s] to raise on appeal." *Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007). "[A] [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all." *Id.* The court's review and legal analysis can be fatally impaired when the court

In their brief, Appellants present the following Statement of the Questions Involved:

> 1. Does a request for admission asking a mental health treatment provider to reveal information learned from a patient during treatment violate the Pennsylvania psychotherapist-patient privilege, 42 PA. STAT. AND CONS. STAT. ANN.§ 5944 (West 2019)?
>
> 2. Does a request for admission asking a party to reveal the contents of privileged medical records violate the Pennsylvania Mental Health Procedures Act, 50 PA. STAT. AND CONS. STAT. ANN. § 7111 (West 2019)?

Brief of Appellants at 3.

It is axiomatic that "[a]n appeal lies only from a final order, unless permitted by rule or statute." **Stewart v. Foxworth**, 65 A.3d 468, 471 (Pa.Super. 2013). As previously noted, this Court's September 6, 2019, Per

---

has to guess at the issues raised. Thus, if a concise statement is too vague, the court may find waiver. **Commonwealth v. Scott**, 212 A.3d 1094, 1112 (Pa.Super. 2019) (citation omitted).

**Commonwealth v. Sexton,** 2019 WL 5540999, at *4 n. 3 (Pa.Super. Oct. 28, 2019).

Herein, Appellants' inarticulate framing of their concise statement and attempt to incorporate "subsidiary issues" arguably resulted in a concise statement that is not specific enough for the trial court to identify and consider the related issues Appellants have raised on appeal. However, because this has not fatally impaired the trial court's legal analysis in its Rule 1925(a) Opinion, we will not deem the two issues Appellants include in their appellate brief to be waived for failure to preserve them properly in the concise statement.

Curiam Order, denied Appellee's motion to quash the instant appeal without prejudice to her right to raise again the issue before the merits panel. Although Appellee has not done so, "since we lack jurisdiction over an unappealable order it is incumbent on us to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order." *Gunn v. Automobile Ins. Co. of Hartford, Connecticut*, 971 A.2d 505, 508 (Pa. Super. 2009) (internal citation and quotation marks omitted). Thus, we begin by addressing whether we possess jurisdiction to review the trial court's order.

In order to be appealable, an order must be a final order, Pa.R.A.P. 341-42; an interlocutory order appealable by right or permission, 42 Pa.C.S.A. § 702(a)-(b), Pa.R.A.P. 311-12; or (3) a collateral order, Pa.R.A.P. 313.[3] When considering the appealability of a discovery order concerning one's mental health records and a report pertaining thereto, this Court recently stated:

> "The courts of Pennsylvania have uniformly held that, if an appellant asserts that the trial court has ordered him [or her] to produce materials that are privileged, then Rule 313 applies." *Farrell v. Regola*, 150 A.3d 87, 95 (Pa.Super. 2016), *citing Yocabet v. UPMC Presbyterian*, 119 A.3d 1012, 1016 n. 1

---

[3] Pa.R.A.P. 313 provides as follows:

**(a)** **General rule**. An appeal may be taken as of right from a collateral order of an administrative agency of lower court.

**(b)** **Definition**. A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa. R.A.P. 313(a), (b).

(Pa.Super. 2015) ("When a party is ordered to produce materials purportedly subject to a privilege, we have jurisdiction under Pa.R.A.P. 313…."), ***Ben v. Schwartz***, 729 A.2d 547, 549 (Pa. 1999) (holding that when a trial court refuses to apply a claimed privilege, the decision is appealable as a collateral order, and ***Commonwealth v. Harris***, 32 A.3d 243, 248 (Pa. 2011) (distinguishing federal law and reaffirming Pennsylvania law that "orders overruling claims of privilege and requiring disclosure are immediately appealable under Pa.R.A.P. 313"). Based on the foregoing, it is clear that this order is appealable as a collateral order.

***Commonwealth v. Segarra appeal of: Complainant Witness, D.G., a minor***, 2020 WL 611132, at * 3 (Pa.Super. Feb. 10, 2020).

Applying the above analysis to the case at bar, we reach the same conclusion. We are able to examine the issues of privilege raised by Appellants without analyzing the underlying issues in the case, *i.e*. Appellants' alleged negligence, gross negligence, carelessness and recklessness. In addition, Appellants allege the requested material is subject to various privileges and that the potential revelation of this sensitive mental health information implicates the "importance" prong of the collateral order doctrine, as such privacy rights are deeply rooted in public policy. Finally, our failure to review the propriety of the trial court's discovery order at this juncture would result in Appellants' claim of privilege being irreparably lost, as they could be forced to disclose sensitive information in conformance with the trial court's discovery order, and such compliance could not be undone in a subsequent appeal. ***See T.M. v. Elwyn***, ***Inc.***, 950 A.2d 1050, 1058 (Pa.Super. 2008).

Having determined that the requirements of the collateral order doctrine have been met and that this Court has jurisdiction over this appeal, we now proceed to examine the issues Appellants have raised. "In reviewing the propriety of a discovery order, we determine whether the trial court committed an abuse of discretion and, to the extent that we are faced with questions of law, our scope of review is plenary." **Id**.

Appellants contend the trial court's May 14, 2019, Order requires them "to disclose [their] knowledge of information obtained from a non-party patient in furtherance of providing mental health treatment to him." Brief for Appellants at 8. Appellants urge this Court to reverse based on either the "psychotherapist-patient privilege," 42 Pa.C.S.A. § 5944[4] or the "Pennsylvania

_____

[4]

> [T]he psychiatrist/psychologist-patient privilege is absolute and the statute contains no exceptions for disclosure. **Commonwealth v. Kyle**, 533 A.2d 120, 125 (Pa. Super. 1987); 42 Pa.C.S. § 5944. The privilege "is designed to protect confidential communications made and information given by the client to the psychotherapist in the course of treatment, but does not protect the psychotherapist's own opinion, observations, diagnosis, or treatment alternatives." **Farrell**, 150 A.3d at 97-98 (citation and internal quotation marks omitted). Segarra is attempting to uncover statements D.G. made during the course of her mental health treatment at the Horsham Clinic, "which falls squarely within the parameters of the privilege." **Id.** at 98.
>
> The privilege applies not only to psychiatrists and psychologists, but to any member of a patient's treatment team. **Id.** at 100, *quoting* **Commonwealth v. Simmons**, 719 A.2d 336, 343 (Pa. Super. 1998) ("[A]ny oral communication by [patient] in private to **any** member of the treatment team and used by the team for the purpose of psychotherapeutic evaluation is

- 7 -

Mental Health Procedures Act" (MHPA), 50 P.S. § 7111.[5] *Id*.   In this regard,

the Pennsylvania Supreme Court has recognized that:

---

> privileged. Additionally, any reference to such a communication in [the facility's] files is privileged as well.") (emphasis in original).
>
> Moreover, "[i]n cases where the [section] 5944 privilege has been found to apply, case law has precluded material from being subjected to even *in camera* review by the trial courts[.]" **Simmons**, 719 A.2d at 341; **see also Kyle**, 533 A.2d at 131 ("Subjecting the confidential file to *in camera* review by the trial court (as well as the appellate courts and staff members) would jeopardize the treatment process and undermine the public interests supporting the privilege. Simply stated, an absolute privilege of this type and in these circumstances requires absolute confidentiality.").

**Segarra, supra**, at * 7.

---

[5]    [T]he MHPA is to be strictly construed. **Commonwealth v. Moyer**, 595 A.2d 1177, 1179 (Pa. Super. 1991). Section 7103 of the MHPA specifies that "[t]his act establishes rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons." 50 P.S. § 7103. Section 7103.1 defines "inpatient treatment" as "[a]ll treatment that requires full or part-time residence in a facility." **Id.** § 7103.1 "Facility" is defined as "[a] mental health establishment, hospital, clinic, institution, center, day care center, base service unit, community mental health center, or part thereof, that provides for the diagnosis, treatment, care or rehabilitation of mentally ill persons, whether as outpatients or inpatients." **Id.**
    Section 7111 of the MHPA "mandates that all documentation concerning persons in treatment be kept confidential, in the absence of patient consent, except in four limited circumstances." **Zane v. Friends Hosp.**, 836 A.2d 25, 31 (Pa. 2003); **see also In re Fortieth Statewide Investigating Grand Jury**, 220 A.3d 558, 566-67 (Pa. 2019). Section 7111 provides as follows.
    (a) All documents concerning persons in treatment shall
    be kept confidential and, without the person's written

"evidentiary privileges are not favored." ***Commonwealth v. Stewart***, 547 Pa. 277, 690 A.2d 195, 197 (1997) (observing "[e]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."). Courts should permit utilization of an evidentiary privilege "only to the very limited extent that … excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." ***Id.*** (quoting ***In re Grand Jury Investigation***, 918 F.2d 374, 383 (3d Cir. 1990)).

***BouSamra v. Excela Health***, 210 A.3d 967, 975 (Pa. 2019).

_____

consent, may not be released or their contents disclosed to anyone except:

(1) those engaged in providing treatment for the person;
(2) the county administrator, pursuant to [50 P.S. § 7110];
(3) a court in the course of legal proceedings authorized by this act; and
(4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.

In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent. This shall not restrict the collection and analysis of clinical or statistical data by the department, the county administrator or the facility so long as the use and dissemination of such data does not identify individual patients. Nothing herein shall be construed to conflict with section 8 of the act of April 14, 1972 (P.L. 221, No. 63), known as the "Pennsylvania Drug and Alcohol Abuse Control Act."

50 P.S. § 7111(a) (footnotes omitted).

***Commonwealth v. Segarra appeal of: Complainant Witness, D.G., a minor***, 2020 WL 611132, at * 4-5 (Pa.Super. Feb. 10, 2020).

Herein, during discovery in her underlying action, Appellee sought to determine whether or not Appellants knew of Mr. Hewlett's sexually violent past at the time he allegedly attacked Appellee on January 21, 2016. Appellee served upon Appellants a request for admission, and Appellants responded as follows:

> **Q.** It is admitted that Defendant, Fairmount Behavioral Health System, knew that Mr. Hewlett was a convicted sex offender in January 2016.
>
> **ANSWER**: Objection. The [c]out previously determined that all inquiries regarding patients other than Plaintiff were not properly part of discovery of this case.

*See* Responses of Defendants, Fairmont Behavioral Health System and UHS of Fairmont, Inc., to Plaintiff's Requests for Admissions, at ¶ 5.

Appellants maintain that an answer to the above-cited request for admission would affect Mr. Hewlett adversely by requiring a review of his medical records, since Appellants do not obtain Megan's Law reports or perform medical background checks on their patients. Appellants observe that Appellee served the disputed request only after the trial court had denied her attempt to discover Mr. Hewlett's medical records and posits that in doing so she sought to bypass MHPA's privileges and the "broadly defin[ed]" psychotherapist-patent privilege to obtain the same information she attempted to glean from the records themselves. Brief for Appellants at 9-10. In arguing that Appellee's "overbroad" request "plainly seeks" privileged information, Appellants reason that:

- 10 -

[Appellants] learn[] of a patient's criminal history, such as a patient's status as a sex offender, directly from that patient during interviews by treating providers for purposes of providing mental health care. Accordingly, to respond to [Appellee's] request, [Appellants] must review a non-party patient's medical records and then disclose information its providers asked a non-party patient to provide as part of the treatment process without that patient's consent.

*Id*. at 13-14.

While they acknowledge that "Hewlett's criminal history is public record[]," Appellants analogize the instant matter to this Court's holdings in cases pertaining to attorney-client privilege and conclude that "[a]bsent his consent, however, [Appellants] may not divulge whether Hewlett communicated this fact to any treating provider at Fairmount. That communication (to the extent it even occurred) falls squarely within the psychotherapist-patient privilege." *Id*. at 17-19. Appellants posit that the trial court erred in finding an application of the privilege would disrupt Megan's Law, for the information Appellee seeks- whether Appellants knew in 2016 that Hewlett is a sex offender- differs from the information that Megan's Law requires to be disclosed- the fact that Hewlett is a sex offender. *Id*.at 22. We disagree.

In rejecting Appellants' privilege claims, the trial court reasoned as follows:

Appellants state that the MHPA explicitly precludes a mental health facility from disclosing the "contents" of a patient's medical records. 50 Pa. Stat. §7111. The PA Superior Court held that testimony regarding privileged documents receives the same protections as the documents themselves. Commonwealth v.

- 11 -

Moyer, 595 A.2d 1177 (Pa. Super. Ct. 1991). Appellants claim the only way to reveal its knowledge of a particular patient's criminal background is by reviewing its intake and initial assessment forms and disclosing the information contained therein, therefore, violating the MHPA.

Furthermore, Appellants claim this [c]ourt's orders require they violate the psychotherapist-patient privilege, which states "no psychiatrist or [psychologist] shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client." 42 Pa. Stat. §5944. Appellants claim the only way to answer the request is by revealing information acquired in the course of providing psychotherapy services to a patient who has not consented to the release of this information. Lastly, Appellants claim this [c]ourt erred in its Order because [Appellants] cannot possibly waive a privilege that its patients, and only its patients, possess.

Appellants are correct in that the MHPA explicitly precludes a mental health facility from disclosing the "contents" of a patient's medical records. However, the request for admission in question is not asking Appellants to disclose any information from a patient's medical records. The request asks Fairmount to confirm or deny whether "[Appellants] knew that Mr. Hewlett was a convicted sex offender in January of 2016." Although it may be possible that this information would be included in a patient's medical records, the information is also available to the general public as required by Megan's Law.

"Looking to the purposes of the privilege as addressed in such cases as Kyle and In re Subpoena No. 22,[6] it is clear that the privilege is designed to protect *confidential communications made and information given* by the client to the psychotherapist in the course of treatment. *The psychiatric file is imbued with the privilege because it might contain such confidential information*." Commonwealth. v. Simmons, 719 A.2d 336, 341 (Pa. Super. 1998) (emphasis added). Mr. Hewlett's status as a registered sex offender does not qualify as the type of information the MHPA intended to make privileged. In fact, it directly counters the entire purpose of Megan's Law to make the identity of a known sex offender available to the public.

Even if, as purported by Appellants, the only way to reveal its knowledge of Mr. Hewlett's criminal background is by reviewing

---

[6] The trial court omits a complete citation for this caselaw.

its intake and initial assessment forms and disclosing the information contained therein, his status as a sex offender is not the type of information protected by the MHPA. Including the sex offender status of a patient in a medical file and thereafter asserting privilege would circumvent Megan's Law. Furthermore, the request for admission in question is not whether Mr. Hewlett disclosed this information to Appellants, but whether they were aware of Mr. Hewlett's publicly available status as a sex offender. The request does not include asking how or when exactly they became aware of this fact, only asking if they were aware of a fact available to the public as of January 2016. Just because the documentation of their knowledge that Mr. Hewlett was a registered sex offender may be located in his medical files does not automatically make Appellants knowledge of that fact privileged. Accordingly, Appellant's claim is misguided.

As such, admitting whether or not Appellants knew of Mr. Hewlett's status as a sex offender in January 2016 would not qualify as a violation of the psychotherapist -patient privilege. Appellants cite 42 Pa Stat. §5944, which states "no psychiatrist or [psychologist] shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client." However, 42 Pa. Stat. §5944 also goes on to say the following: "the confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client." (Emphasis supplied) The focus is again on the alleged "confidential" nature of Mr. Hewlett's status as a sex offender. Mr. Hewlett has absolutely no right to keep his status as a sex offender concealed. In fact, doing so would be in direct opposition to Megan's Law.

Appellee is not asking for any information regarding the actual treatment of Appellants' patient. Additionally, [she] did not ask for any private thoughts of Mr. Hewlett that may have been discussed with his psychotherapist or observations or analysis the psychotherapist made in relation to these discussions. We again emphasize, all that was asked is whether they were aware of Mr. Hewlett's status as a sex offender in January 2016. Appellants make the argument that they are unable to disclose whether they knew of this information without disclosing contents of privileged communications and medical records due to the placement of a patient's legal history alongside his medical records. At no point in Appellee's request for admission was there a request for production of Mr. Hewlett's medical records or privileged

communications. Knowledge of information, which is mandated to be made available to the general public, does not require the disclosure of any of the privileged content that may be found in these records.

Appellants assert they do not obtain publicly available background information on its patients and that any knowledge of such comes from the patient himself or collateral contacts. Dep. Of Nicole Vandermay 219:17-220:2; 222:15-16. However, just because the source of knowledge of this information may be the patient does not automatically correlate to that information being considered privileged. As stated previously, the purpose of Megan's Law is so that the identity of a sex offender is to never be concealed from the general public. Appellants cannot assert psychotherapist-patient privilege as it pertains to a patient's registration as a sex offender. Furthermore, Appellee [is] merely requesting knowledge as to whether or not they knew, as of January 2016, of Mr. Hewlett's status, which is available to the general public. Again, [she is] not asking how they were made aware or for any information regarding treatment as a result of his status. Accordingly, Appellants claim that patient-psychotherapy privilege would be violated if they answer the request for admission is misguided.

Likewise, since this is not privileged information, there is no issue of a non-party patient losing privilege based on Appellants answering this request for admission. Appellants claim that the MHPA gives absolute confidentiality privilege to the patient, and only the patient may waive that privilege and allow protected information to be released. Pearson v. Miller, 211 F.3d 57, 70 (3d Cir. 2000) (emphasis added). Once again, Appellants are mistaken in that Mr. Hewlett's status as a registered sex offender qualifies as protected and privileged information which would require consent by the patient. Appellants cannot claim merely because a patient may have disclosed this information in the course of a medical intake inquiry that it should be treated as confidential and privileged information. It is mandated that Mr. Hewlett's status as a registered sex offender be attainable by the general public. As a result, Mr. Hewlett has no right of privilege to his status as a sex offender, therefore, there are no waiver rights for him to lose as a result of this discovery request. Likewise, Appellants do not require a waiver to indicate whether or not they knew of information available to the general public in January of 2016, regardless of the source of that information.

Trial Court Opinion, filed 9/26/19, at 3-6 (unnumbered) (footnote omitted) (emphasis in original).

Utilizing the same rationale, we reach the same conclusion. Appellants' claim to the contrary, the MHPA is to be strictly construed, and the psychiatrist-patient privilege protects only confidential communications and information relayed by a patient to his psychiatrist or psychologist in the course of his or her treatment. ***See Segarra, supra***. The information Appellee seeks does not require the exposure of confidential communications kept by Appellants in Hewlett's treatment record; rather, the request for admission seeks to determine whether Appellants had knowledge of an undisputed and publicly available fact- Hewlett's sex offender status. As Appellee notes, "[a] simple 'admit' or 'deny' sheds no light on when, why, where or from whom the information was (or was not) gleaned. In other words, [Appellants'] **actual answer** to the request reveals nothing beyond their awareness of a publicly-promulgated fact. **That is all**." Brief for Appellee at 9 (emphasis in original).

Finding no error, we affirm the trial court's May 14, 2019, Order, affirming Appellee's Motion to Strike Objections to Requests for Admission.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/25/20