J-S07011-22

2022 PA Super 183

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARC W. NUZZO | : | |
| | : | |
| Appellant | : | No. 726 WDA 2021 |

Appeal from the Order Dated May 20, 2021
In the Court of Common Pleas of McKean County Criminal Division at
No(s): CP-42-CR-0000175-2019

BEFORE: OLSON, J., SULLIVAN, J., and PELLEGRINI, J.*

OPINION BY OLSON, J.: **FILED: OCTOBER 18, 2022**

Appellant, Marc W. Nuzzo, appeals from the May 20, 2021 order denying his request to seal an amended petition seeking an order directing an evaluation of his competency to stand trial.[1] In addition, the challenged order designated Appellant's competency petition as a public document, subject to disclosure except for certain communications related to Appellant's prior medical treatment and diagnosis.[2] We vacate the May 20, 2021 order and remand this case for further proceedings in accordance with this opinion.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Throughout this opinion, we shall refer to Appellant's May 7, 2021 amended petition seeking an order directing an evaluation of his competency to stand trial as Appellant's "competency petition."

[2] A photostatic copy of the May 20, 2021 order, as well as the memorandum opinion accompanying said order, were timestamped as filed with the trial court on May 20, 2021. An original of said order was also timestamped and docketed by the trial court on June 2, 2021. Appellant's appeal properly lies from the order docketed on May 20, 2021. **See** Pa.R.A.P. 108 (stating, "the

The record demonstrates that on March 28, 2019, Appellant was charged with aggravated assault by vehicle (3 counts), homicide by vehicle (1 count), involuntary manslaughter (1 count), and recklessly endangering another person (6 counts).[3] Appellant's criminal charges stemmed from his involvement in an automobile accident where it was alleged that, in an attempt to pass another vehicle, Appellant crossed the double yellow lines appearing on the roadway and struck a vehicle, traveling in the oncoming, opposite lane of travel and in which three victims were riding. *See* Affidavit of Probable Cause, 5/28/19, at 2. Two victims sustained serious bodily injuries, while a third victim ultimately died from injuries sustained in the collision. *Id.* at 1-2.

Pertinent to the instant appeal, during the course of the criminal proceedings, counsel for Appellant filed a motion on March 19, 2021, requesting the trial court continue a status conference on the ground Appellant had recently been hospitalized and was unable to participate in the

_____

date of entry of an order by a court [] shall be the day the clerk of the court [] mails or delivers copies of the order to the parties, or if such delivery is not otherwise required by law, the day the clerk [] makes such copies public").

[3] 75 Pa.C.S.A. §§ 3732.1(a) and 3732, as well as 18 Pa.C.S.A. §§ 2504(a) and 2705, respectively. Appellant was also charged with the following summary offenses: limitations on driving on left of roadway, driving on right side of roadway, meeting vehicle proceeding in opposite direction, limitations on overtaking on the left, driving on roadways laned for traffic, careless driving, and reckless driving. 75 Pa.C.S.A. §§ 3306(a)(1), 3301(a), 3302, 3305, 3309(1), 3714(a), and 3736(a), respectively. A criminal information was filed against Appellant on June 4, 2019, which charged Appellant with the aforementioned crimes, as well as the additional summary offense of no passing zone, 75 Pa.C.S.A. § 3307(b).

proceedings. On March 29, 2021, the trial court granted Appellant's motion for a continuance and further stated,

> The limited medical information provided to the [trial] court regarding [Appellant's] hospitalization will be sealed and forwarded to the clerk of courts in [the Court of Common Pleas of] McKean County with the express condition that the sealed document is not public and is not to be accessed without an express order of the [trial] court. Parties having knowledge of the [content of the sealed documents shall not divulge that information] except to note that [Appellant] is hospitalized and unable to proceed at this time.

Trial Court Order, 3/29/21 (continuing the status conference to April 21, 2021).

On April 20, 2021, in anticipation of requesting another continuance of the scheduled status conference, Appellant's counsel moved to file, under seal, a second motion for continuance and medical documentation in support thereof. Appellant's Motion to File Motion to Continue Under Seal, 4/20/21 (stating that, Appellant's medical condition precluded him from participating in the scheduled status conference). The Commonwealth filed a response in opposition to Appellant's request to seal the record concerning his filings. Within its submission, the Commonwealth asked the trial court to issue an order specifically designating what medical information was not to be disclosed. Commonwealth's Motion to Oppose Sealing of Record, 4/20/21. That same day, the trial court granted Appellant's motion to file a continuance motion under seal and ordered, *inter alia*, that the continuance motion and

the supporting medical documentation would not be open to public inspection. Trial Court Order, 4/20/21.

On April 21, 2021, the trial court entertained argument on Appellant's motion for a continuance and the Commonwealth's opposition to the same. Although the trial court order entered at the conclusion of that hearing was filed under seal, and its precise contents are unknown to this Court, the record reflects that the trial court directed Appellant to file a motion seeking a competency evaluation, if one were contemplated. Both Appellant and the Commonwealth were directed to file legal memoranda addressing the trial court's authority to seal the record if Appellant subsequently filed a motion seeking a competency evaluation. *See* Commonwealth's Memorandum of Law, 5/6/21, at 1; *see also* Appellant's Memorandum of Law, 5/7/21.

On May 7, 2021, Appellant's counsel filed a competency petition pursuant to Section 7402(c) of the Mental Health Procedures Act, 50 P.S. §§ 7101-7503.[4] Counsel asserted that Appellant "was incompetent to stand trial or otherwise proceed with the case at this time[.]"[5] Appellant also

_____

[4] Appellant filed his original petition for an order directing a competency evaluation on May 6, 2021. An amended competency petition followed the next day in order to correct a citation to the Mental Health Procedures Act.

[5] Section 7402(a) of the Mental Health Procedures Act states that, "[w]henever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense, he shall be deemed incompetent to be tried, convicted[,] or sentenced so long as such incapacity continues." 50 P.S. § 7402(a).

requested that the trial court seal his competency petition. *See* Trial Court Memorandum Opinion, 5/20/21, at 1 (stating, Appellant's counsel "requests the [trial c]ourt seal [the competency petition] and presumably any results of the [hearing on the motion]"). On May 20, 2021, the trial court denied Appellant's request to seal the competency petition, stating, "[t]he amended petition for [a competency evaluation] of [Appellant] will be filed as a public document, subject to [disclosure except for communications by the psychiatrists and licensed professional counselors who have evaluated Appellant]." Trial Court Order, 5/20/21.[6]

On June 21, 2021, Appellant appealed from the May 20, 2021 order "in so far as the second sentence thereof finds that a [competency petition] is a public record as well as the order at issue." That same day, Appellant filed a request to amend the May 20, 2021 order, pursuant to Pa.R.A.P. 1311(b), to certify the interlocutory order as appealable by permission pursuant to 42 Pa.C.S.A. § 702(b).[7] On June 28, 2021, the trial court denied Appellant's

_____

[6] In a June 4, 2021 order, the trial court ordered that Appellant undergo a psychological evaluation and reiterated that "the [competency petition] will be deemed to be [a] public document[.]" Trial Court Order, 6/4/21.

[7] Section 702(b) of the Judicial Code states,

> When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate

request to amend the interlocutory order, stating the trial "court believes this appeal to be totally frivolous and constitutes a further unnecessary delay in this very old criminal case which is replete with defense delays and unnecessary appeals."[8]  Trial Court Order, 6/28/21.  This appeal followed.

Appellant raises the following issues for our review:

[1.]  Is an order denying a request to seal [a] petition for [an] order directing [a competency evaluation], filed pursuant to []50 P.S. § 7402[], and all other documents related thereto[,] a collateral order under Pa.R.A.P. 313?

[2.]  Does Section 7111 [] of the Mental Health Procedures Act [] require the [trial] court [to] seal the petition [seeking an] order directing [a competency evaluation], filed pursuant to []50 P.S. § 7402[] in this case, and all other documents related thereto, such that the same remain confidential and not a public record?

Appellant's Brief at 4.[9]

---

termination of the matter, it shall so state in such order.  The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

42 Pa.C.S.A. § 702(b).  Rule 1311(b) permits a party to file an application to amend an interlocutory order "to set forth expressly [] the statement specified in 42 Pa.C.S.A. § 702(b)" within 30 days after the entry of such interlocutory order.  Pa.R.A.P. 1311(b).

[8] Appellant did not file a petition pursuant to Pa.R.A.P. 1311(a) with this Court requesting permission to appeal the May 20, 2021 order.  Rule 1311(a) states, *inter alia*, that, "[a]n appeal may be taken by permission from an interlocutory order . . . for which certification pursuant to 42 Pa.C.S.A. § 702(b) was denied[.]"  Pa.R.A.P. 1311(a)(1).

[9] For purpose of disposition, Appellant's issues have been renumbered.

As Appellant recognizes by way of his first issue, we must first determine whether the May 20, 2021 interlocutory order is appealable because appealability implicates our jurisdiction. *Calabretta v. Guidi Homes, Inc.*, 241 A.3d 436, 440 (Pa. Super. 2020). Jurisdiction is purely a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary. *Id*. at 440-441.

Because jurisdictional grounds for this appeal were not immediately apparent, this Court, in an August 20, 2021 *per curiam* order, directed Appellant to show cause why the May 20, 2021 order satisfied the collateral order doctrine, as discussed more fully *infra*. *Per Curiam* Order, 8/20/21. Appellant filed a response to the rule to show cause order with this Court on August 31, 2021. In a September 29, 2021 *per curiam* order, this Court discharged its rule to show cause order and advised Appellant that the issue may be revisited by the merits panel. *Per Curiam* Order, 9/29/21.

Generally, a party may only appeal from a final order, which is defined by Pennsylvania Rule of Appellate Procedure 341 as an order that, *inter alia*, "disposes of all claims and of all parties[.]" Pa.R.A.P. 341(b)(1). One exception to this general rule, however, is commonly known as the collateral order doctrine and is set forth in Pennsylvania Rule of Appellate Procedure

The trial court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed its Rule 1925(a) opinion on August 30, 2021, stating that it was relying on its May 20, 2021 memorandum opinion, which accompanied the order that is the subject of the instant appeal.

313. Pursuant to Rule 313, "an appeal may be taken as of right from a collateral order of a trial court[.]" Pa.R.A.P. 313(a). Rule 313(b) defines a collateral order as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b).

It is well-established that, consistent with the definition that appears in Rule 313, there are three elements that define a collateral order – separability, importance, and irreparable loss if review is postponed. *A.A. v. Glicken*, 237 A.3d 1165, 1169 (Pa. Super. 2020), *citing* *Ben v. Schwartz*, 729 A.2d 547 (Pa. 1999). "[A]n order is 'separable' from the main cause of action if it is capable of review without consideration of the main issue in the case." *Commonwealth v. Shearer*, 882 A.2d 462, 468 (Pa. 2005). When assessing "whether an issue is sufficiently important to support application of the collateral order doctrine, [an appellate] court should weigh the interests implicated in the case against the costs of piecemeal litigation." *Glicken*, 237 A.3d at 1169 (citation, original brackets, and original quotation marks omitted). The "importance requirement is satisfied when the claim implicates rights deeply rooted in public policy going beyond the particular litigation at hand and does not merely affect the individuals involved in the case at hand." *Shearer*, 882 A.2d at 469 (citation and original quotation marks omitted). "An issue is important if the interests that would potentially go unprotected without immediate appellate review are significant relative to

the efficiency interests sought to be advanced by adherence to the final [order] rule." ***Glicken***, 237 A.3d at 1169 (original brackets and original quotation marks omitted). Finally, irreparable loss results when "the claim raised will clearly be lost forever if appellate review is delayed until final judgment of the case." ***Shearer***, 882 A.2d at 469. With this three-prong test in mind, appellate courts construe the collateral order doctrine narrowly in order "to avoid undue corrosion of the final order rule and to prevent delay resulting from piecemeal review of trial court decisions." ***Shearer v. Hafer***, 177 A.3d 850, 858 (Pa. 2018) (citation, original quotation marks, and ellipsis omitted).

There is little dispute that Appellant raises a claim that is separable from the main cause of action since the confidential status of the competency petition is capable of review without consideration of the main substantive issues in this criminal proceeding. More specifically, we may adjudicate Appellant's privacy interest in his medical and mental health records without a determination of his competency to stand trial or an adjudication of his criminal responsibility for the alleged offenses, which are inquiries critical to the pre-trial and trial phases of this case. As such, the instant appeal is separable from the merits of the underlying criminal prosecution, including the underlying issue of Appellant's culpability. ***See Hafer***, 177 A.3d at 858 (stating that, "an order is separable from the main cause of action if it can be resolved without an analysis of the merits of the underlying dispute and if it

is entirely distinct from the underlying issue in the case" (citation and original quotation marks omitted)).

Turning to the importance requirement, we are asked in the case *sub judice* to balance Appellant's right to privacy in his medical treatment and diagnosis records against the cost of piecemeal litigation and the interests served by the final order rule. Our Supreme Court recognizes that the "confidentiality of mental health records is the *sine qua non* of effective treatment." **Zane v. Friends Hosp.**, 836 A.2d 25, 33 (Pa. 2003). Pursuant to Section 7111 of the Mental Health Procedure Act, "[a]ll documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except[, *inter alia*,] a court in the course of legal proceedings authorized by this act[.]" 50 P.S. § 7111(a)(3). Similar to the psychiatrist-psychologist/patient-client confidentiality privilege,[10] the

---

[10] The psychiatrist-psychologist/patient-client confidentiality privilege is codified in Section 5944 of the Judicial Code as follows:

> No psychiatrist or person who has been licensed [] to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S.A. § 5944.

restrictions placed on the disclosure of mental health treatment records is intended to foster and "aid in the effective treatment of the [patient] by encouraging the patient to disclose information fully and freely without fear of public disclosure." *Gormley v. Edgar*, 995 A.2d 1197, 1204 (Pa. Super. 2010) (stating that, "even the threat of disclosure of the contents of private mental health records can have a chilling effect on one's willingness to seek treatment"); *see also Octave ex rel. Octave v. Walker*, 103 A.3d 1255, 1260 (Pa. 2014) (stating, the confidentiality protections afforded by Section 7111 encourage "patients to offer information about themselves freely and without suffering from fear of disclosure of one's most intimate expressions to others and the mistrust that the possibility of disclosure would engender"). Given the prevalence of mental health disorders in today's society,[11] proper assessment of the confidential status afforded to mental health treatment records is important for all individuals who are considering, seeking, or currently undergoing mental health treatment and those interests extend beyond the parties in this case. Therefore, Appellant's claim asserting confidentiality in his request for an order directing a competency evaluation is important and deeply rooted in public policy. *See In re "B"*, 394 A.2d 419,

---

[11] According to the Centers for Disease Control and Prevention, studies reveal, "1 in 5 Americans will experience a mental health illness in a given year[,] 1 in 5 children, either currently or at some point during their life, have had a seriously debilitating mental illness[, and] 1 in 25 Americans live with a serious mental health illness, such as schizophrenia, bipolar disorder, or major depression." *See* https://www.cdc.gov/mentalhealth/learn/index.htm (last visited September 13, 2022) (references omitted).

425 (Pa. 1978) (stating, "an individual's interest in preventing the disclosure of information revealed in the context of a [doctor]-patient relationship has deeper roots than the Pennsylvania doctor-patient privilege statute [in] that the patient's right to prevent disclosure of such information is constitutionally based"); *see also T.M. v. Elwyn, Inc.*, 950 A.2d 1050, 1057-1058 (Pa. Super. 2008) (stating that, orders involving potentially confidential and privileged materials, especially materials involving sensitive mental health information, implicate the "importance" prong of the collateral order doctrine "because the privacy rights involved are deeply rooted in public policy"), *relying on*, *Schwartz*, *supra*; *see also Pasquini v. Fairmount Behavioral Health Sys.*, 230 A.3d 1190, 1194 (Pa. Super. 2020) (holding that, "the potential revelation of this sensitive mental health information implicates the 'importance' prong of the collateral order doctrine"). As such, given the importance of the privilege interest concerning the protection of mental health records and information, the policy against piecemeal litigation must yield to permit immediate appellate review.

Finally, Appellant's claim concerning the confidentiality of his competency petition and attached materials will be irreparably lost if appellate review is delayed until entry of a judgment of sentence. *See Commonwealth v. Harris*, 32 A.3d 243, 249 (Pa. 2011) (stating that, once "material is in the open, the bell has been rung, and cannot be unrung by a later appeal"). Therefore, we conclude that the May 20, 2021 order designating Appellant's

competency petition as a public document is immediately appealable under Rule 313. We now turn to the merits of this appeal.

In his second issue, Appellant asserts the trial court erred in designating his competency petition as a public document. Appellant's Brief at 8-21. Appellant argues that Section 7111 of the Mental Health Procedures Act required the trial court to seal his Section 7402 competency petition. *Id.*

Generally, we review a trial court's decision to grant or deny closure of a record for an abuse of discretion. ***Glicken***, 237 A.3d at 1170. When the claim raised on appeal involves statutory interpretation, however, we address the issue presented as a question of law for which our standard of review is *de novo* and our scope of review is plenary. ***In re B.W.***, 250 A.3d 1163, 1170 (Pa. 2021).

It is well-established that the Mental Health Procedures Act is to be strictly construed. ***Commonwealth v. Moyer***, 595 A.2d 1177, 1179 (Pa. Super. 1991), *appeal denied*, 604 A.2d 248 (Pa. 1992). In construing a statute, appellate courts must give effect to the legislature's intent and give effect **to all of** the statute's provisions. ***B.W.***, 250 A.3d at 1171 (emphasis added), *citing* 1 Pa.C.S.A. § 1921(b). As our Supreme Court has explained,

> [t]he plain language of the statute is the best indication of the legislature's intent. To discern the plain meaning of a statute, [appellate courts] consider the operative statutory language in context and give words and phrases their common and approved usage. Courts must give effect to a clear and unambiguous statute and cannot disregard the statute's plain meaning to implement its objectives. Only if the statute is ambiguous, and not explicit, do we resort to other means of discerning legislative intent.

- 13 -

***B.W.***, 250 A.3d at 1171 (citations and quotation marks omitted).

Section 7111 of the Mental Health Procedures Act governs the confidentiality of mental health records as follows:

### § 7111.  Confidentiality of records

(a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:

(1) those engaged in providing treatment for the person;

(2) the county administrator, pursuant to [50 P.S. § 7110];

(3) a court in the course of legal proceedings authorized by this act; and

(4) pursuant to Federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a Federal agency.

In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent.  This shall not restrict the collection and analysis of clinical or statistical data by the department, the county administrator[,] or the facility so long as the use and dissemination of such data does not identify individual patients. Nothing herein shall be construed to conflict with [71 P.S. § 1690.108 (relating to confidentiality of records under the Pennsylvania Drug and Alcohol Abuse Control Act)].

(b) This section shall not restrict judges of the courts of common pleas, mental health review officers[,] and county mental health and mental retardation administrators from disclosing information to the Pennsylvania State Police or the Pennsylvania State Police from disclosing information to any person, in accordance with the provisions of 18 Pa.C.S.[A.] § 6105(c)(4) (relating to persons not to possess, use, manufacture, control, sell[,] or transfer firearms).

50 P.S. § 7111 (footnotes omitted).  Our Supreme Court in ***Zane***, ***supra***, held that the terms of Section 7111 and its provisions regarding the confidentiality

of mental health records are unambiguous and leave "little room for doubt as to the intent of the Legislature[.]" ***Zane***, 836 A.2d at 31. The ***Zane*** Court, in explaining the plain-meaning of Section 7111(a), stated,

> [Section 7111(a)] applies to **all** documents regarding one's treatment, not just medical records. Furthermore, the verbiage that the documents "**shall** be kept confidential" is plainly not discretionary but mandatory in this context - it is a requirement. The release of the documents is contingent upon the person's written consent and the documents may not be released "**to anyone**" without such consent. The terms of the provision are eminently clear and unmistakable and the core meaning of this confidentiality section of the Mental Health Procedures Act is without doubt - there shall be no disclosure of the treatment documents to anyone.

***Zane***, 836 A.2d at 32 (emphasis in original) (noting that, the Court's "conclusion regarding the meaning and broad scope of [S]ection 7111 is amply supported by the virtually unanimous case law interpreting this provision" (citations omitted)).

In examining one of the enumerated exceptions to the mandatory prohibition against disclosure under Section 7111(a), the ***Zane*** Court stated that Section 7111(a)(3) "permits disclosure to a court in the course of legal proceedings" but with limitations. ***Zane***, 836 A.2d at 32. The ***Zane*** Court explained,

> disclosure to a court is not permitted in any legal proceedings, but **only in those legal proceedings authorized by the Mental Health Procedures Act**. Our review of the Mental Health Procedures Act reveals certain legal proceedings that are authorized by the statute, that is, proceedings falling within the confines of the act. These include involuntary emergency treatment, 50 P.S. § 7303; court-ordered involuntary treatment, 50 P.S. § 7304 and § 7305; transfer of persons in involuntary

treatment, 50 P.S. § 7306; and voluntary mental health commitment determinations, 50 P.S. § 7204 and § 7206.

***Zane***, 836 A.2d at 32 (emphasis added); ***see also Moyer***, 595 A.2d at 1179 (stating, "[t]he unambiguous language of [S]ection 7111[(a)](3) leads us to conclude that a patient's in[-]patient mental health treatment records may be used by a court only when the legal proceedings being conducted are within the framework of the [Mental Health Procedures Act]").

Section 7402 of the Mental Health Procedures Act[12] states that, "[w]henever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense, he shall be deemed incompetent to be tried, convicted[,] or sentenced so long as such incapacity continues."[13]  50 P.S. § 7402(a).

---

[12] When considering the proper scope of disclosure of mental health records in competency proceedings, we must read Section 7402 *in tantum* with our Supreme Court's interpretation of the exception set forth in Section 7111(a)(3).  In ***Zane***, our Supreme Court held that Section 7111(a)(3) permits disclosure of treatment records to a court only in those legal proceedings authorized by the Mental Health Procedures Act, but no further. ***See Zane***, 836 A.2d at 32 (detailing a non-exhaustive list of legal proceedings authorized by the Mental Health Procedures Act).  Following the approach of our Supreme Court in ***Zane***, we are persuaded that Section 7402, which pertains to a legal proceeding authorized by the Mental Health Procedures Act, contemplates disclosure to a court but not the public. ***See B.W.***, 250 A.3d at 1171 (requiring appellate courts to give effect to all of a statute's provisions when construing a statute).

[13] We note that there is a distinction between a person who is incompetent to stand trial and a person who is severely mentally disabled. ***See*** 50 P.S.

> The court, either on application or on its own motion, may order an incompetency examination at any stage in the proceedings and may do so without a hearing unless the examination is objected to by the person charged with a crime or by his counsel. In such event, an examination shall be ordered only after determination upon a hearing that there is a *prima facie* question of incompetency. Upon completion of the examination, a determination of incompetency shall be made by the court where incompetency is established by a preponderance of the evidence.

50 P.S. § 7402(d). An application for a competency evaluation may be made by "an attorney for the Commonwealth, a person charged with a crime, his counsel, or the warden or other official in charge of the institution or place in which he is detained." 50 P.S. § 7402(c).

> When ordered by the court, an incompetency examination shall take place under the following conditions:
>
> (1) It shall be conducted as an outpatient examination unless an inpatient examination is, or has been, authorized under another provision of this act.
>
> (2) It shall be conducted by at least one psychiatrist or licensed psychologist and may relate both to competency to proceed and to criminal responsibility for the crime charged.

---

§ 7402(b) (stating, "a court may order involuntary treatment of a person found incompetent to stand trial but who is not severely mentally disabled"); *see also Commonwealth v. McQuaid*, 347 A.2d 465, 470-471 (Pa. 1975) (stating, a person may be committable for incompetency to stand trial while at the same time not committable for reason of mental disability because a person "might easily lack 'self-control, judgment[,] and discretion' in the context of a criminal trial and yet be capable of caring for himself in his daily 'affairs and social relations'"); *Commonwealth v. Knight*, 419 A.2d 492, 496 (Pa. Super. 1980) (explaining that, competency to stand trial relates to one's mental state during criminal proceedings, while mental disability relates to one's mental state at the time the crime was committed, the latter providing a defense).

(3) The person shall be entitled to have counsel present with him and shall not be required to answer any questions or to perform tests unless he has moved for or agreed to the examination. Nothing said or done by such person during the examination may be used as evidence against him in any criminal proceedings on any issue other than that of his mental condition.

(4) A report shall be submitted to the court and to counsel and shall contain a description of the examination, which shall include:

(i) diagnosis of the person's mental condition;

(ii) an opinion as to his capacity to understand the nature and object of the criminal proceedings against him and to assist in his defense;

(iii) when so requested, an opinion as to his mental condition in relation to the standards for criminal responsibility as then provided by law if it appears that the facts concerning his mental condition may also be relevant to the question of legal responsibility; and

(iv) when so requested, an opinion as to whether he had the capacity to have a particular state of mind, where such state of mind is a required element of the criminal charge.

50 P.S. § 7402(e). "The determination of the competency of a person who is detained under a criminal charge shall be rendered by the court within 20 days after the receipt of the report of examination unless the hearing was continued at the person's request." 50 P.S. § 7402(g).

Here, counsel for Appellant argues that, "[t]he plain language of [Section 7111] has no limitation on the types of documents that are confidential [but, rather,] only requires that [the documents] concern the person in treatment." Appellant's Brief at 20. Counsel contends that Appellant's competency petition contains averments and materials related to Appellant's mental health, some of which were sealed pursuant to prior trial

court orders. These averments and materials were included with the competency petition to establish a *prima facie* question of Appellant's incompetency to stand trial. *Id.* at 10-13. Appellant asserts that his competency petition, like his prior motions for continuance which were sealed by the trial court, falls within the "all documents" language of Section 7111. Because of this, Appellant concludes that the trial court erred in denying the request to seal the competency petition. *Id.* at 20-21.

In denying Appellant's request, the trial court held that, "[n]othing bars the release of competency proceedings to the public, so long as the emphasis is on the diagnosis of a criminal defendant's competency to stand trial." Trial Court Opinion, 5/20/21, at 2. In so holding, the trial court explained that, "[t]he law presumes that criminal trials are subject to a common law right of access," including a right of "public access to judicial records." *Id.* The trial court further explained that this presumption in favor of public access to judicial records in criminal trials "must be read in conjunction with the Mental Health Procedures Act, and its emphasis on the confidentiality of treatment records, as opposed to diagnostic records." *Id.* Thus, the trial court found that the Mental Health Procedures Act required treatment records to be kept confidential but diagnostic records were not to be afforded the same protection. *Id.* at 2-3.

Appellant's issue appears to be one of first impression as we have found no case law, and neither Appellant nor the Commonwealth cite to any case law, that addresses whether a petition seeking a competency evaluation is

encompassed within the "all documents" language of Section 7111(a). A plain-reading of Section 7111(a) leads us to conclude that such a petition is governed by the confidentiality protections of Section 7111(a) **when** the petition contains factual averments and materials offered in support of the *prima facie* showing of incompetency and which refer, reflect, or relate, *inter alia*, to mental health treatment and diagnosis records, including, but not limited to, names of physicians and treatment facilities, hospitalizations, medical opinions or diagnosis (including medical records, letters, and charts), and current or recommended courses of treatment.[14]  *See Zane*, 836 A.2d at 32 (reiterating, Section 7111(a) "applies to **all** documents regarding one's treatment, not just medical records" (emphasis in original)).  When an attorney for the Commonwealth, a defendant, a defendant's counsel, or a warden or other official of the institution or place in which the defendant is detained calls into question the defendant's competency to stand trial, the individual seeking the competency determination must file a petition with the trial court requesting an order for a competency evaluation.[15]  50 P.S.

---

[14] "[P]*rima facie* evidence is such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient."  *In re L.Z.*, 111 A.3d 1164, 1185 (Pa. 2015) (citation, original quotation marks, and original brackets omitted).

[15] The petition requirement does not apply if the trial court questions a defendant's competency to stand trial and orders a competency evaluation *sua sponte*.  *See* 50 P.S. §§ 7402(d).

§§ 7402(c) and (d). In such a petition, the individual must present averments and material to support the *prima facie* question of incompetency sufficient to cause the trial court to order a competency evaluation.[16] 50 P.S. § 7402(d); ***see also*** 50 P.S. § 7403(a) (stating that, "the individual making an application to the [trial] court for an order directing an incompetency examination shall have the burden of establishing incompetency to proceed by a preponderance of the evidence"). It stands to reason that in order to establish the *prima facie* showing of incompetency, a petitioner must provide details concerning a defendant's current mental health status, including, *inter alia*, records of current treatment, diagnosis, and hospitalizations. These factual averments and supporting materials relate to "one's treatment" as contemplated by Section 7111(a). A petitioner may choose, but is not required, to set forth those details in a petition seeking a competency evaluation.[17] Therefore, a

_____

[16] At a minimum, evidence must be presented to support the *prima facie* showing of incompetency in order to, *inter alia*, maintain the integrity of such a proceeding and foreclose the possibility that competency proceedings become no more than a tactic used to delay prosecution.

[17] Section 7402(c) sets forth only that an "application" must be made to the trial court requesting such an order. Section 7402 does not provide guidelines and requirements of the type of evidence that must be contained within a petition seeking a competency evaluation other than to require that the information establish a *prima facie* case for incompetency to stand trial. ***See*** 50 P.S. § 7402.

In practice, these types of applications are typically desensitized of detailed mental health information (such as, physician and facility names, records of mental health treatment and diagnosis, and physician opinions as to an individual's mental health status or competency) and, rather, contain only

document, including a petition seeking a competency evaluation, or a motion for a continuance to file the same, **that sets forth factual averments and incorporates information regarding a defendant's mental health treatment and diagnosis**, such as in the *case sub judice*, are encompassed within the confidentiality protections of Section 7111(a).[18]

Moreover, where a competency petition (or a motion for a continuance to file the same) details a defendant's mental health treatment and diagnosis, such as in the case *sub judice*, the filing does not implicate the exception to confidentiality protections as set forth in Section 7111(a)(3) to the extent that the record of such filings may be disclosed to anyone other than the trial

---

general assertions of why such a request has been made. Generally, if a petitioning-party, or the trial court, believes additional information concerning an individual's mental health treatment and status is necessary to establish a *prima facie* case, the petitioning-party will seek, or the trial court may order, a closed-hearing, or in-camera review of such information so as to avoid the release of confidential information to the public. Such was not the case here. *See* Amended Petition for Order Directing an Incompetency Examination, 5/7/21.

[18] We do not embrace the trial court's distinction between mental health treatment and mental health diagnosis. A petition that seeks a competency assessment requests such an evaluation because the petitioner believes that the diagnosis will show the defendant is incompetent to stand trial. To satisfy the *prima facie* showing of incompetency, a petitioner must make assertions and present evidence of the defendant's mental health status, treatment, and diagnosis, as then-known. Therefore, it is an insurmountable burden in many cases to segregate references to diagnosis from references to treatment.

court.[19]  As we have explained *supra*, a competency petition is a legal proceeding referenced within the Mental Health Procedures Act.  **See** 50 P.S. § 7402(c) (stating, "[a]pplication to the [trial] court for an order directing an incompetency evaluation may be presented by an attorney for the Commonwealth, a person charged with a crime, his counsel, or the warden or other official in charge of the institution or place in which he is detained").  Pursuant to the confidentiality exception set forth in Section 7111(a)(3), disclosure of a defendant's mental health treatment and diagnosis is only permitted, without the written consent of the party, **to the trial court in the course of a legal proceeding authorized by the Mental Health Procedures Act**.  50 P.S. § 7111(a)(3); **see also Zane**, 836 A.2d at 32 (stating, disclosure to the trial court is permitted in legal proceedings authorized by the Mental Health Procedures Act).  Conspicuously absent from the exception set forth in Section 7111(a)(3) is an extension of the exception that permits all documents relating to a person's mental health treatment to be disclosed to the public *vis-a-vis* the judicial record without the written

---

[19] We further find that the filing of a competency petition, as contemplated by the Mental Health Procedures Act, does not constitute an implicit waiver of the confidentiality protections afforded by Section 7111.  **See In re Fortieth Statewide Investigating Grand Jury**, 220 A.3d 558, 568 (Pa. 2019) (stating, "implicit waiver of this privilege is disfavored and has been recognized by our [Supreme] Court in only one circumstance — where a plaintiff initiated a civil action and sought to use Section 7111 to shield disclosure of mental health treatment records, which he could reasonably have foreseen would be relevant given that his mental health was directly implicated by his cause of action").

consent of the party. ***See In re Fortieth Statewide Investigating Grand Jury***, 220 A.3d at 566-567 (stating that, Section 7111(a) permits disclosure to only those parties designated by the statute, unless consent is provided). To enhance and improve mental health treatment, the Mental Health Procedures Act, in the absence of patient consent, shields from disclosure all documents, including treatment and diagnosis records. To achieve these purposes, the exception to confidentiality afforded by Section 7111(a)(3) is strictly construed as permitting disclosure **only** to the trial court in the course of the legal proceeding, and **only** as when the legal proceeding is authorized by the Mental Health Procedures Act.

Therefore, in the case *sub judice*, the trial court erred as a matter of law in finding that Appellant's competency petition did not fall under the auspices of the confidentiality protections afforded by the Mental Health Procedures Act because Appellant's competency petition detailed his mental health treatment and diagnosis, which the Mental Health Procedures Act was designed to protect from public disclosure without authorization. As such, the trial court abused its discretion and erred as a matter of law in denying Appellant's request to have all of the documents concerning his mental health treatment and diagnosis sealed. A review of the competency petition demonstrates that it contains, *inter alia*, assertions pertaining to Appellant's mental health treatment and his need for continuing mental health treatment, and identifies, *inter alia*, several of Appellant's treating psychiatrists and licensed professional counselors. As such, the competency petition in the case *sub*

*judice* falls within the definition of "all documents" relating to a person's mental health treatment.[20]

Consequently, we vacate the trial court's May 20, 2021 order denying Appellant's request to seal his competency petition. We remand the case to the trial court so that the trial court may enter an order sealing Appellant's petition and his amended petition seeking an order directing a competency evaluation. The trial court may direct that the docket reflect the filing of such documents and the resulting disposition, but these documents are protected from disclosure in the public judicial record based upon the specific information contained therein.[21]

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judge Pellegrini joins.

_____

[20] To be clear, we do not intend that our disposition of the case *sub judice* create a blanket rule of confidentiality over all petitions and motions related to requests for orders directing a competency evaluation. Given the unique nature of the pleadings required, including the assertions and evidence provided therein, to establish the *prima facie* question of incompetency, an individual assessment of the applicability of Section 7111(a) is required. As discussed *supra*, good practice is for a petitioner to set forth general assertions in support of a competency evaluation that do not detail mental health treatment and diagnosis and request that the trial court conduct a closed-court, or in-camera review of the matter where such confidential documents, if available, may be presented.

[21] The public's right to access judicial records, as otherwise permitted by law, remains intact through proper notation on the trial court docket of the action and disposition of matters involving a competency evaluation.

Judge Sullivan files a Concurring and Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/18/2022